FILED
CLERK

11/7/2013 3:19 pm

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
--------------------------------------------------------X
MONA KANCIPER,

            Plaintiff,

       -against-

LEONARD LATO, individually, and THOMAS
J. SPOTA, III., individually and in his official
capacity as District Attorney of Suffolk County,

            Defendants.

--------------------------------------------------------X

**MEMORANDUM OF**
**DECISION AND ORDER**
13-CV-00871 (ADS)(WDW)

**APPEARANCES:**

**McLaughlin & Stern, LLP**
*Attorneys for the Plaintiff*
260 Madison Avenue
New York, NY 10016
    By:  Alan E. Sash, Esq.
       Steven J. Hyman, Esq, Of Counsel

**Suffolk County Attorney's Office**
*Attorneys for the Defendants*
100 Veterans Memorial Highway
P.O. Box 6100
Hauppauge, NY 11788
    By:  Brian C. Mitchell, Assistant County Attorney

**LaRusso & Conway, Attorneys at Law**
*Attorneys for the Defendant Leonard Lato*
300 Old Country Road
Suite 341
Mineola, NY 11501
    By:  Joseph R. Conway, Esq, Of Counsel

**Garrett W. Swenson, Jr., Esq.**
*Attorney for the Defendant Thomas J. Spota, III*
76 Bay Road
Brookhaven, NY 11719
    By: Garrett W. Swenson, Jr., Esq., Of Counsel

**SPATT, District Judge**.

The Plaintiff Mona T. Kanciper (the "Plaintiff") commenced this civil rights action on February 15, 2013 pursuant to 42 U.S.C. § 1983, *et seq.* ("Section 1983") and New York State law, stemming from the execution of a search warrant on her property by agents of the Suffolk County Society for the Prevention of Cruelty to Animals Inc. (the "SPCA") and the Defendant Leonard Lato ("Lato"), as well as her subsequent arrest and prosecution.

On July 18, 2013, the Plaintiff filed a second amended complaint.   Presently pending before the Court are separate motions by Lato and his co-defendant, Thomas J. Spota, the District Attorney of Suffolk County ("Spota"), pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 12(b)(6) dismissing the second amended complaint for failure to state a cause of action.  For the following reasons, the motions are granted in part and denied in part.

## I.  BACKGROUND

The following facts are drawn from the second amended complaint and construed in a light most favorable to the Plaintiff.

The Plaintiff owns and resides on a 50–acre horse farm in Manorville, New York, which is located in Suffolk County.  This horse farm is the location of a corporation called The New York Horse Rescue Corporation, which rescues discarded and unwanted horses.  According to the Plaintiff, since 1998, her horse farm has rescued more than 1,500 horses, many of whom were bound for auction kill buyers.  These horses were then either adopted by families or lived the remainder of their lives on the horse farm, sometimes being used to provide horseback riding lessons.  The Plaintiff's husband, who is now deceased, was the farm's resident veterinarian.  The Plaintiff's two children also live on the property.

2

Lato is a former Suffolk County Assistant District Attorney and Bureau chief of the Insurance Crimes Bureau and the Defendant Spota is and was at all relevant times in this case the District Attorney of Suffolk County.

The non-party SPCA is a not-for-profit corporation organized and existing under the laws of the State of New York.  Relevant here, the SPCA is empowered under Criminal Procedure Law § 2.10(7) to grant its employees or agents "peace officer status," which in turn, empowers these individuals to search and arrest, carry a weapon, and act to enforce the laws of the State of New York in the same manner as governmental employees.

On or about August 5, 2009, a woman called the SPCA to make a complaint regarding "equine abuse" at the Plaintiff's horse farm.  The Plaintiff claims that this complaint was made only because the complainant had a personal vendetta against her.  Regardless, the SPCA referred the case to Shawn Dunn, a part-time volunteer, for investigation.  Dunn eventually closed the case file against the Plaintiff in December 2009, finding no probable cause that the Plaintiff or her husband was abusing horses or other animals.

On December 23, 2009, another woman with a supposed personal vendetta against the Plaintiff called the SPCA to allege that the Plaintiff was abusing horses.  The SPCA assigned the case to Michael Norkelun.  On Christmas Day, December 25, 2009, Norkelun made an unannounced visit to the horse farm to question the Plaintiff.  In his official report, Norkelun indicated that the Plaintiff "did show this officer several horses inside a large barn that appeared healthy." (Second Am. Compl. at ¶ 18.)

Nevertheless, Nerkulin continued his investigation and had one of the complainants collect written statements from the other complainants.  Neither Lato nor Norkelun ever interviewed these other complainants in person.

3

The SPCA subsequently sought a draft warrant from the Suffolk County District Attorney's Office ("DA's office") to search the Plaintiff's property for evidence of animal abuse. The SPCA approached the Case Assignment Bureau ("CAB") in the DA's Office. CAB is a non-trial bureau within the DA's Office which drafts search warrants and investigates borderline felony cases.

Al Croce ("Croce"), an assistant district attorney in the CAB, first reviewed the SPCA's investigative file on the Plaintiff and declined to draft a search warrant because the evidence compiled against the Plaintiff apparently did not suggest that she committed any crime. Dissatisfied with Croce's response, the SPCA approached Edward Jablonski ("Jablonski"), and requested that he draft a search warrant for the SPCA. According to the Plaintiff, Jablonski determined that the evidence against the Plaintiff was "stale, insufficient and ridd[led] with hearsay." (Id. ¶ 24.) Jablonski, on behalf of the DA's Office, opted not to apply for or draft a search warrant. At this time, the Plaintiff asserts, the investigation should have ended.

However, the Plaintiff alleges that the SCPA was fearful of potential negative publicity from the complainants who had threatened to contact the County Executive, as well as rescue groups, and who would complain about the inadequacy of the SCPA. Thus, the SPCA was allegedly frustrated and disgruntled when the DA's Office declined to further investigate the Plaintiff. Indeed, the SPCA Chief of Detectives Gerald Lauber referred to the CAB, Jablonski, and Croce as a "roadblock" which he wanted to remove.

Accordingly, in or about mid-February 2010, Lauber reached out to his "facebook friend" Lato and requested that Lato investigate the Plaintiff using the resources of the DA's Office, including the drafting of a search warrant. The Plaintiff emphasizes that, at this time, Lato knew that CAB, Croce, and Jablonski had previously declined to further investigate the Plaintiff or to

4

seek a search warrant against her. (Id. ¶ 26-27.)  Lato also allegedly knew that it was the DA's Office policy against "DA-shopping" that once one bureau chief like Jablonski decides not to further investigate a case, another bureau chief like Lato may not override that decision. Nonetheless, without CAB's knowledge or consent and knowing that the DA's Office had already determined that probable cause did not exist, Lato "surreptitiously" decided to investigate whether the Plaintiff committed any crimes. (Id. ¶ 26-36.)

Upon discovering that Lato had violated the DA's Office policy governing case assignments, Spota and Emily Constant, the Chief Assistant District Attorney, spoke with Jablonski and Lato.  According to Lato, Spota contacted him "and wanted to know why insurance crimes w[ere] doing an animal abuse case" and Lato responded that "Insurance Crimes, the unit, wasn't doing it, I was doing it with Michelle Pitman."  Lato further stated that "I had done it and [Spota] didn't direct me to stop.  The implication is that he was okay with my continuing, but there was nothing expressed."  The Plaintiff insists that Spota had a pattern and practice of allowing Lato to work on "special projects" which resulted in civil rights violations.

Lato subsequently drafted a warrant for the SPCA to search the Plaintiff's horse farm for evidence of animal cruelty and endangering the welfare of a child. Penal Law § 260.10(1). According to John Thompson, a Lieutenant with the SPCA who was one of the people who executed the search warrant against the Plaintiff, the SPCA does not investigate child endangerment cases and if the SPCA should ever see evidence of child abuse, it would refer the matter to Child Protective Services (the "CPS"), a New York State agency.  However, Lato never contacted the CPS or the Suffolk County Police.

Lato also drafted an affidavit in support of a search warrant for Norkelun to sign to be presented to a local magistrate.  Lato finalized the warrant on March 18, 2010 and informed

5

Norkelun on how to get it signed by a local magistrate because Norkelun had never applied for a warrant on his own before.

The Plaintiff alleges that, in addition to drafting the warrant on matters beyond the legal scope of the SPCA's jurisdiction, Lato knowingly misrepresented the status of Norkelun.  In particular, Lato represented that Norkelun was a public officer/police officer by referring to him as "Detective Michael Norkelun, Shield No. 139."  The Plaintiff also asserts that Lato knowingly misrepresented the size of the horse farm in the warrant, indicating that it was approximately 4 acres in size when it was actually 50 acres in size.  According to the Plaintiff, Lato intentionally misrepresented the size of the horse farm so that the local court would approve the warrant as-is and not require any further specificity in connection with the areas of the farm to be searched.  Lato also allegedly misrepresented that Norkelun had "personal knowledge" of the Plaintiff's animal cruelty and endangering the welfare of a child and that Norkelun "personally knew" the five witnesses that gave written statements to him.

On March 20, 2010, Lato, Norkulen, Lauber and more than a dozen members of the SPCA arrived unannounced at the horse farm to execute the search warrant.  No member of the Suffolk County Police Department, CPS, or the DA's Office, other than Lato, took part in the search.  During the course of the search, Lato determined that the SPCA had probable cause to search the Plaintiff's home and personal belongings, including bank statements, retirement accounts, and vacation plans.  As a result, Lato drafted another warrant for the SPCA to search the Plaintiff's residence.

According to the Plaintiff, the second warrant suffered from the same legal infirmities as the first warrant – namely, that (1) Norkelun and Lauber were not legally authorized to request a search warrant under Criminal Procedure Law § 690; (2) the warrant gave the SPCA authority to

investigate and enforce penal statutes outside the scope of their limited jurisdiction to investigate animal cruelty laws; and (3) the warrant misrepresented the size of the horse farm and Norkelun's status as a detective.  Notwithstanding these alleged infirmities, once the second search warrant was obtained, Norkelun returned to the Plaintiff's premises, entered her home, and allegedly seized her personal property.

Indeed, the SPCA allegedly dug up large plots of land throughout the farm, caused significant property damage, and separated the Plaintiff from her two small children for hours. No animals were removed from the farm and no arrests were made.

In July 2010, a grand jury indicted the Plaintiff on three counts of animal cruelty solely with regard to dogs, not horses, and two counts of endangerment of a minor.  The Plaintiff subsequently surrendered to the police department.

The Plaintiff eventually went to trial on the five counts against her.  Ultimately, on October 13, 2011, after a nonjury trial, the court dismissed one charge and found the Plaintiff not guilty on all of the other charges except one, endangerment of a child.  This count was based upon allegations that the Plaintiff, in front of a 10-year-old child, injected a dog who was dangerous and aggressive with a tranquilizer.  As the Plaintiff points out in the second amended complaint, no counts were sustained against her related to animal cruelty, which are the only laws that the SPCA is permitted to enforce.  The endangerment of a child charge was being appealed at the time that the complaint was filed.  However, on November 14, 2012, a unanimous panel of the New York Appellate Division, Second Judicial Department, reversed that conviction and dismissed the indictment, holding that the evidence failed to establish that witnessing the injection of the tranquilizer was likely to result in harm to the physical, mental, or moral welfare of the child.  See New York v. Mona Kanciper, 100 A.D.3d 778, 954 N.Y.S.2d

7

146 (2d Dep't 2012).  Accordingly, the Plaintiff has been exonerated on all charges brought against her by the Defendants.

The Plaintiff further alleges that due to a falling out with Spota, Lato resigned from the DA's Office.  Thereafter, Lato was asked to work for the SPCA, though it is not clear if Lato accepted a position.

Meanwhile, on February 4, 2011, while the criminal case was still pending, the Plaintiff brought suit in New York State Supreme Court, County of Suffolk, against the SPCA and other individuals, titled <u>New York Horse Rescue Corporation, M. Butler Farm, LLC and Mona T. Kanciper v. Suffolk County Society for the Prevention of Cruelty to Animals, Roy Gross, Michael Norkelun, Ann Marie Fergo, Emily Holder, and Ann Collins Studer</u>, Index No. 4263/2011.  In this action, the Plaintiff seeks civil damages from the SPCA with regard to their alleged abuse of process; negligent investigation of witness complaints and in the obtaining and execution of search warrants; tortious interference with prospective business relations; fraud and misrepresentation; negligent misrepresentation; and intentional infliction of emotional distress. Lato was deposed in that action.

Further, on February 1, 2012, the Plaintiff also initiated an Article 78 Petition in New York State Supreme Court, Suffolk County, Index No. 3473/2012, to declare the SPCA a "public entity" pursuant to New York State law, and therefore subject to the Freedom of Information Law.  Both state court actions are apparently still pending.

On April 30, 2012, the Plaintiff commenced a separate lawsuit in this court against the SCPCA for (1) a declaratory judgment that New York Criminal Procedure Law § 2.10(7) – allowing the SPCA  to grant their employees "peace officer status," and thereby empowering them with various governmental investigatory and enforcement functions – is unconstitutional

under the United States Constitution; (2) damages pursuant to Section 1983, stemming from the search of her property and her arrest by the agents of the SPCA; and (3) a violation of the New York State Constitution and New York State Executive Law.  The SPCA moved to dismiss the complaint.

For reasons not relevant here, on February 23, 2013, the Court dismissed the complaint in that action.  The Plaintiff appealed, and the Second Circuit vacated the judgment and remanded the case to this Court for further proceedings.  That case is pending before the Court.

In the interim, on February 15, 2013, the Plaintiff commenced this action against Lato and Spota.  The Plaintiff asserts a Section 1983 cause of action against Lato and Spota on the basis that they violated her Fourth and Fifth Amendment Rights under the United States Constitution.   The Plaintiff also asserts claims for malicious prosecution and abuse of process under New York State law.

In August 2013, the Defendants separately moved to dismiss the second amended complaint pursuant to Fed. Rule. Civ. P. 12(b)(6).  As a threshold matter, the Defendants contend that all the claims are barred by absolute prosecutorial immunity, or alternatively qualified immunity, and that the official capacity claims are barred by the Eleventh Amendment.  In addition, the Defendants assert that the Plaintiff's Section 1983 claims fail as a matter of law because the Plaintiff fails to adequately allege the personal and direct involvement of the Defendants in any constitutional deprivation.  Finally, the Defendants maintain that the claims for malicious prosecution and abuse of process are time-barred, or alternatively, insufficient as a matter of law.

## II. DISCUSSION

A. <u>Rule 12(b)(6) Legal Standard</u>

Under the now well-established <u>Twombly</u> standard, a complaint should be dismissed pursuant to Fed. R. Civ. P. Rule 12(b)(6) only if it does not contain enough allegations of fact to state a claim for relief that is "plausible on its face." <u>Bell Atl. Corp. v. Twombly</u>, 550 U .S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929, 570 (2007). The Second Circuit has explained that, after <u>Twombly</u>, the Court's inquiry under Rule 12(b)(6) is guided by two principles. <u>Harris v. Mills</u>, 572 F.3d 66 (2d Cir. 2009) (citing <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009)).

"First, although 'a court must accept as true all of the allegations contained in a complaint,' that 'tenet' 'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" <u>Id.</u> at 72 (quoting <u>Iqbal</u>, 129 S. Ct. at 1949).

"'Second, only a complaint that states a plausible claim for relief survives a motion to dismiss' and '[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" <u>Id.</u> (quoting <u>Iqbal</u>, 129 S. Ct. at 1950). Thus, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and . . . determine whether they plausibly give rise to an entitlement of relief." <u>Iqbal</u>, 129 S. Ct. at 1950. The issue on a motion to dismiss is "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." <u>Todd v. Exxon Corp.</u>, 275 F.3d 191, 198 (2d Cir. 2001) (quoting <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974)).

Of importance here, the Second Circuit has cautioned that "a defendant presenting an immunity defense on a Rule 12(b)(6) motion instead of a motion for summary judgment must accept the more stringent standard applicable to this procedural route." McKenna v. Wright, 386 F.3d 432, 436 (2d Cir. 2004).  In such situations, "plaintiff is entitled to all reasonable inferences from the facts alleged, not only those that support his claim, but also those that defeat the immunity defense." Id.

B.   As to Absolute Immunity

"To determine whether an official enjoys absolute immunity[, the courts] take a 'functional approach,' examining 'the nature of the function performed, not the identity of the actor who performed it.'" Simon v. City of New York, 727 F.3d 167, 171-72 (2d Cir. 2013)(citation omitted).  A prosecutor acting in the role of an advocate in connection with a judicial proceeding is entitled to absolute immunity for all acts "intimately associated with the judicial phase of the criminal process." Imbler v. Pachtman, 424 U.S. 409, 430, 96 S. Ct. 984, 47 L. Ed. 2d 128 (1976); see also Flagler v. Trainor, 663 F.3d 543, 547 (2d Cir. 2011) (noting that prosecutors receive absolute immunity "only when acting as advocates and when their conduct involves the exercise of discretion").  These functions include deciding whether to bring charges and presenting a case to a grand jury or a court, along with the tasks generally considered adjunct to those functions, such as witness preparation, witness selection, and issuing subpoenas. See Imbler, 424 U.S. at 431 n. 33, 96 S. Ct. 984.  Absolute immunity also extends to persons "who act under [a prosecutor's] direction in performing functions closely tied to the judicial process." Hill v. City of New York, 45 F.3d 653, 660 (2d Cir. 1995).

By contrast, prosecutors receive only qualified immunity when performing "administrative duties and those investigatory functions that do not relate to an advocate's

preparation for the initiation of a prosecution or for judicial proceedings." Buckley v. Fitzsimmons, 509 U.S. 259, 269, 113 S. Ct. 2606, 125 L. Ed. 2d 209 (1993); see also Bernard v. Cnty. of Suffolk, 356 F.3d 495, 502 (2d Cir. 2004).  Investigation, arrest, and detention have historically and by precedent been regarded as the work of police, not prosecutors, and "'they do not become prosecutorial functions merely because a prosecutor has chosen to participate.'" Day v. Morgenthau, 909 F.2d 75, 77–78 (2d Cir. 1990), quoting Robison v. Via, 821 F.2d 913, 918 (2d Cir. 1987).  Absolute immunity is also not available "for the act of giving legal advice to the police in the investigative phase of a criminal case, or for assisting in a search and seizure or arrest." Hill, 45 F.3d at 661 (citation omitted); see also Kalina v. Fletcher, 522 U.S. 118, 130–31, 118 S. Ct. 502, 139 L. Ed. 2d 471 (1997) (holding that the prosecutor was not entitled to absolute immunity for acting as a complaining witness); Buckley, 509 U.S. at 277-78, 113 S. Ct. 2606 (holding that the prosecutor was not entitled to absolute immunity for holding a press conference); Barr v. Abrams, 810 F.2d 358, 362 (2d Cir. 1987) (recognizing "meaningful" distinction "between filing the criminal information and procuring an arrest warrant, on the one hand, and executing the arrest warrant, on the other").

"[T]he official seeking absolute immunity bears the burden of showing that such immunity is justified for the function in question," Burns v. Reed, 500 U.S. 478, 486, 111 S. Ct. 1934, 114 L. Ed. 2d 547 (1991), and "[t]he ultimate question [ ] is whether the prosecutors have carried their burden of establishing that they were functioning as advocates when they engaged in the challenged conduct," Doe v. Phillips, 81 F.3d 1204, 1209 (2d Cir. 1996) (internal quotation marks omitted).  "Moreover, district courts are encouraged to determine the applicability of an absolute immunity defense at the earliest appropriate stage, and preferably before discovery." Moye v. City of New York, 11 CIV. 316 (PGG), 2012 WL 2569085, at *4

(S.D.N.Y. July 3, 2012).  "District courts likewise evaluate the applicability of absolute immunity before assessing whether a plaintiff has sufficiently alleged a constitutional violation." Id. at n. 3.

In this case, the Court notes that absolute immunity does not attach simply because the Defendants were prosecutors.  On the other hand, the fact that all the allegations concerning Lato occurred pre-trial does not by itself preclude a finding that Lato acted in a prosecutorial capacity. Consistent with the functional approach used in this Circuit, the "plaintiff['s] labeling various actions 'investigative' or 'administrative' in the complaint is of no moment." Crews v. Cnty. of Nassau, 06-CV-2610 (JFB)(WDW), 2007 WL 4591325, at 15 n. 15 (E.D.N.Y. Dec. 27, 2007); Hickey v. City of New York, No. 01–CV–6506 (GEL), 2002 WL 1974058, at *4 (S.D.N.Y. Aug. 26, 2002) ("the presence or absence of absolute immunity turns on what the prosecutor is alleged to have done, and not on the legal theory advanced or the label attached to the cause of action").

Applying the functional test to the allegations in the second amended complaint, the Court first considers Lato's pre-warrant examination of the evidence.  As the Plaintiff observes, this was not a traditional scenario where the police accumulate the evidence after which the District Attorney's Office presents it to the grand jury.  Here, neither the police nor CPS were involved.  In fact, the District Attorney's Office previously declined to investigate the Plaintiff. Indeed, because the case was closed at the time Lato assigned the investigation to himself, "it cannot be said that [he] was simply evaluating the evidence.  Rather, [Lato] was performing investigative functions, which are not protected by absolute immunity." Kirchner v. Cnty. of Niagara, 107 A.D.3d 1620, 1624, 969 N.Y.S.2d 277 (4th Dep't 2013).  For these reasons, the Court finds that Lato's work prior to the issuance of the warrants is not protected by absolute immunity.

The fact that Lato's actions may have been taken in preparation for the grand jury does not establish a basis for absolute immunity. See Buckley, 509 U.S. at 275–76, 113 S. Ct. 2606 (noting that a prosecutor cannot receive absolute immunity for investigative work merely because the work may later "be retrospectively described as 'preparation'" for a judicial proceeding).  As the Supreme Court has pointed out, "[a]lmost any action by a prosecutor, including his or her direct participation in purely investigative activity, could be said to be in some way related to the ultimate decision whether to prosecute," but absolute immunity is not so expansive. Burns, 500 U.S. at 495, 111 S. Ct. 1934; see also Kent v. Cardone, 404 Fed. Appx. 540, 541–42 (2d Cir. 2011) ("Although the duties of the prosecutor in his role as advocate for the State involve actions preliminary to the initiation of a prosecution and actions apart from the courtroom, absolute prosecutorial immunity is afforded only for actions that are connected with the prosecutor's role in judicial proceedings, not for every litigation-inducing conduct.")(internal quotation marks and citations omitted); Zahrey v. Coffey, 221 F.3d 342, 353 ("[A] subsequent immunized act of a single official does not break the chain of causation traceable to his initial misconduct occurring in another capacity.").

However, the Court finds that Lato's role in the procurement of the search warrants is protected by absolute immunity.  Indeed, the Supreme Court of the United States has extended this immunity to a prosecutor's "appearance in court in support of an application for a search warrant and the presentation of evidence at that hearing," Burns, 500 U.S. at 492, 111 S. Ct. 1934.  Appearing at a probable cause hearing is "intimately associated with the judicial phase of the criminal process," Imbler, 424 U.S. at 430, 96 S. Ct. 984, 47 L. Ed. 2d 128, and thus it is "connected with the initiation and conduct of the prosecution." Burns, 500 U.S. at 492, 111 S. Ct. 1934.

14

The Plaintiff alleges that Lato presented false and misleading information in his applications for the search warrants.  On this point, Kalina v. Fletcher, 522 U.S. 118, 118 S. Ct. 502, 139 L. Ed. 2d 471 (1997), is instructive.  There, the Supreme Court held that a prosecutor's "activities in connection with the preparation and filing of two of . . . three charging documents -- the information and the motion for an arrest warrant – [were] protected by absolute immunity" but "her act in personally attesting to the truth of the averments in [a] certification" was not protected as she was "acting as a complaining witness rather than a lawyer when she executed the certification 'under penalty of perjury.'" Id. at 129, 118 S. Ct. 502.

Here, Norkelun, rather than Lato, was the affiant who swore that probable cause existed to support searching the Plaintiff's property.  Thus, there is no allegation that Lato vouched for any of the misrepresentations.  Rather, Lato helped to draft and prepare the search warrant materials.

Moreover, the fact that Lato may have acted with malice or dishonorable intentions does not defeat absolute immunity. See Pinaud v. County of Suffolk, 52 F.3d 1139, 1148 (2d Cir. 1995) ("[T]ry as he might, Pinaud's attempt to avoid the defense of absolute prosecutorial immunity by fashioning his claim in terms of a conspiracy based only on actions taken outside the courtroom does not avail."); Dory v. Ryan, 25 F.3d 81, 83 (2d Cir. 1994) (holding that absolute immunity protects prosecutors from allegations that they "conspiring to present false evidence at a criminal trial.").

However, the Court finds that Lato's actions in taking part in the search of the Plaintiff's property are not protected by absolute immunity because "seizures are normally police functions, and they do not become prosecutorial functions merely because a prosecutor has chosen to participate." Robison v. Via, 821 F.2d 913, 918–19 (2d Cir. 1987); Myers v. Morris, 810 F.2d

1437, 1462 n. 20 (8th Cir. 1987) (the prosecutor's participation in removal of the children is not tantamount to case initiation where the parents have not been arrested in connection with alleged molestation of those children).

The second amended complaint alleges that "Lato unlawfully aided in the execution of the initial warrant by searching [the Plaintiff]'s barn and property for almost an hour without legal authority to do so" and "participated in the unlawful search of the [Plaintiff]'s home and property and the seizing of her personal items." (Second Amended Compl. at ¶ 36, 56). The burden of proof with regard to absolute immunity rests with Lato, who does not dispute that he was present for the search. Under these circumstances, the Court finds that Lato may not invoke absolute immunity with respect to his role in the search.

With respect to Spota, the Court notes that the allegations regarding him are limited to his apparent acquiescence in Lato's alleged malfeasance. Indeed, unlike Lato, Spota was not directly involved in the investigation, nor did he produce any work that was used in the prosecution. Rather, the allegations regarding Spota concern his administrative or investigative duties. Accordingly, the Court finds that Spota cannot invoke absolute immunity. The fact that Spota may not have been personally involved in the underlying investigation and prosecution of the Plaintiff is an argument more appropriately reserved for a Section 1983 analysis.

C.   As to Qualified Immunity

As noted above, Spota as well as Lato – inasmuch as his actions are not protected by absolute immunity – alternatively invoke qualified immunity with regard to any investigative activity.

If absolute immunity does not apply, government actors may be shielded from liability for civil damages by qualified immunity, i.e., if their "conduct did not violate plaintiff's clearly

established rights, or if it would have been objectively reasonable for the official to believe that his conduct did not violate plaintiff's rights." Mandell v. Cnty. of Suffolk, 316 F.3d 368, 385 (2d Cir. 2003).  As the Second Circuit has noted, "[t]his doctrine is said to be justified in part by the risk that the 'fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties.'" McClellan v. Smith, 439 F.3d 137, 147 (2d Cir. 2006) (quoting Thomas v. Roach, 165 F.3d 137, 142 (2d Cir. 1999)).  Thus, qualified immunity, similar to absolute immunity, is not merely a defense, but rather is also "an entitlement not to stand trial or face the other burdens of litigation." Mitchell v. Forsyth, 472 U.S. 511, 526, 105 S. Ct. 2806, 86 L. Ed. 2d 411 (1985).  Accordingly, the availability of qualified immunity should similarly be decided by a court "at the earliest possible stage in litigation." Hunter v. Bryant, 502 U.S. 224, 227, 112 S. Ct. 534, 116 L. Ed. 2d 589 (1991).

Nonetheless, "[a] defendant asserting a qualified immunity defense at the 12(b)(6) stage . . . faces a formidable hurdle.  Because the evidence supporting a finding of qualified immunity is normally adduced during the discovery process and at trial, the defense of qualified immunity [usually] cannot support the grant of a Fed. R. Civ. P. 12(b)(6) motion for failure to state a claim upon which relief can be granted." McCray v. City of New York, Nos. 03–cv–9685 (DAB), 03–cv–9974 (DAB), 03–cv10080 (DAB), 2007 WL 4352748, at *18, 2007 U.S. Dist. LEXIS 90875, at *66 (S.D.N.Y. Dec. 11, 2007) (internal citations and quotation marks omitted).

"The availability of the defense depends on whether a reasonable officer could have believed his action to be lawful, in light of clearly established law and the information he possessed." Weyant v. Okst, 101 F.3d 845, 858 (2d Cir. 1996) (internal quotation marks and alterations omitted).  In the context of malicious prosecution claims, an arresting officer is entitled to qualified immunity if either: (a) the arresting officer's belief that probable cause

17

existed was objectively reasonable; or (b) officers of reasonable competence could disagree on

whether the test for probable cause was met. See Walczyk v. Rio, 496 F.3d 139, 163 (2d Cir.

2007).  The Second Circuit has defined this standard, which is often referred to as "arguable

probable cause," as follows:

> Arguable probable cause exists when a reasonable police officer in the same
> circumstances and possessing the same knowledge as the officer in question could
> have reasonably believed that probable cause existed in the light of well-
> established law.  It is inevitable that law enforcement officials will in some cases
> reasonably but mistakenly conclude that probable cause is present, and we have
> indicated that in such cases those officials – like other officials who act in ways
> they believe to be lawful – should not be held personally liable.

Cerrone v. Brown, 246 F.3d 194, 202–03 (2d Cir. 2001) (internal quotation marks and citations

omitted) (emphasis in original).  In particular, the Second Circuit has affirmed that "'[a]rguable'

probable cause should not be misunderstood to mean 'almost' probable cause. . . If officers of

reasonable competence would have to agree that the information possessed by the officer at the

time of arrest did not add up to probable cause, the fact that it came close does not immunize the

officer." Jenkins v. City of New York, 478 F.3d 76, 87 (2d Cir. 2007).

Although qualified immunity typically is asserted by police officers, the qualified

immunity standard of arguable probable cause also applies to prosecutors. See Murphy v.

Neuberger, No. 94 Civ. 7421, 1996 WL 442797, at *11–12, 1996 U.S. Dist. LEXIS 11164, at

*37–38 (S.D.N.Y. Aug. 6, 1996) (applying arguable probable cause standard to prosecutor's

actions after determining that prosecutor was not entitled to absolute immunity).

In the instant case, the second amended complaint alleges that (1) Lato secretly opened a

closed criminal investigation in violation of his office's policy against "DA-shopping;"

(2) drafted search warrants knowing that probable cause did not exist; (3) made several material

omissions and misstatements within those warrant applications; (4) directed the SPCA to search

the Plaintiff's home and property for matters outside the scope of its jurisdiction; (5) failed to involve the Suffolk County Police or CPS in the investigation; and (6) executed the search warrants without proper authority.

The Defendants dispute some of these allegations. For example, the Defendants note that, even according to second amended complaint, at least three women complained about the Plaintiff's actions. Therefore, the Defendants assert, probable cause supported the search of the Plaintiff's property.

In the Court's view, "there is simply insufficient information at this early stage to determine whether the conduct of [Lato] is protected by qualified immunity." Anilao, 774 F. Supp. 2d at 492. For example, there is no objective evidence yet, nor would there be at this stage of the litigation, that the DA's Office had a no "DA-shopping" policy. While the violation of such a policy would not, by itself, implicate the United States Constitution, these additional facts would weigh heavily in determining whether Lato acted in an objectively reasonable manner. Indeed, these additional facts would also affect a determination as to whether Spota acted in an objectively reasonable manner when he essentially "looked the other way."

In sum, while the Court again recognizes that the qualified immunity issue should be decided at the earliest juncture where possible, the Defendants' respective motions to dismiss the Plaintiff's claims on the basis of qualified immunity are denied. "[T]he fact-intensive question of what the defendants knew or reasonably believed, or indeed whether there is any material dispute about that question, can only be addressed on a fuller factual record, at summary judgment or trial. For now, the [second amended] complaint specifically alleges that the defendants were aware that the arrest was illegal and without probable cause. If such knowledge can be proved, then qualified immunity would not apply." Hickey, 2002 WL 1974058, at *5; see

Zahrey, 221 F.3d at 357 (where the plaintiff put forth sufficient allegations that he was deprived of liberty as a result of the prosecutor's fabrication of evidence during the investigation of the plaintiff, court could not grant the defendant prosecutor qualified immunity as a matter of law on a motion to dismiss); Bostic v. City of Binghamton, No. 3:06–CV–540 (TJM)(DEP), 2006 WL 2927145, at *4, 2006 U.S. Dist. LEXIS 73948, at *13 (N.D.N.Y. Oct. 11, 2006) ("While the facts that may be established through discovery might lead to the conclusion that the individual defendants possessed actual or arguable probable cause to arrest Plaintiff and commence his prosecution  . . . that determination will have to await a summary judgment motion or trial.").

As argued by Spota in his motion to dismiss, the Court is aware that a grand jury indictment gives rise to a presumption of probable cause.  However, the Court finds that the Plaintiff has, as explained later, set forth sufficient allegations to overcome this presumption and, accordingly, the Court cannot, for purposes of the pending motions, rely on the indictment to infer probable cause for the search of the Plaintiff's property. Colon v City of New York, 60 N.Y.2d 78, 82-83, 455 N.E.2d 1248 (1983), rearg denied 61 NY2d 670, 472 N.Y.S.2d 1028 (Table) (1983)( "If plaintiff is to succeed in his malicious prosecution action after he has been indicted, he must establish that the indictment was produced by fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith.")

D.  As to Eleventh Amendment Immunity

"For suits against individuals in their official capacities, the applicability of the Eleventh Amendment bar depends on the form of relief sought." Lee v. Dep't of Children & Families, 3:11CV1910 (AWT), 2013 WL 1633048 (D. Conn. Apr. 15, 2013).  Money damages cannot be recovered from state officers sued in their official capacities. See e.g., Will v. Michigan Dept. of State Police, 491 U.S. 58, 71, 109 S. Ct. 2304, 105 L. Ed. 2d 45 (1989) ("a suit against a state

official in his or her official capacity is not a suit against an official but rather is a suit against the official's office"); Edelman v. Jordan, 415 U.S. 651, 663, 94 S. Ct. 1347, 39 L. Ed. 2d 662 (1974) ("a suit by private parties seeking to impose a liability which must be paid from public funds in the state treasury is barred by the Eleventh Amendment"); Goonewardena v. New York, 475 F. Supp. 2d 310, 329 (S.D.N.Y. 2007) ("sovereign immunity also extends to bar claims for monetary damages brought against state officers sued under section 1983 in their official capacities"). Similarly, "judgments against state officers declaring that they violated federal law in the past" are not permitted. Puerto Rico Aqueduct and Sewer Auth. v. Metcalf & Eddy, 506 U.S. 139, 146, 113 S. Ct. 684, 121 L. Ed. 2d 605 (1993) (citing Green v. Mansour, 474 U.S. 64, 73, 106 S. Ct. 423, 88 L. Ed. 2d 371 (1985)). However, prospective injunctive relief is available against individuals being sued in their official capacities. See Edelman, 415 U.S. at 663, 94 S. Ct. 1347; Ex Parte Young, 209 U.S. 123, 28 S. Ct. 441, 52 L. Ed. 714 (1908).

Here, the Plaintiff is seeking only monetary damages against Spota in his individual capacity for personally violating her civil rights. She is not seeking monetary damages against Spota in his official capacity as District Attorney. Rather, the Plaintiff only seeks prospective injunctive relief against Spota in his official capacity. Accordingly, the Defendants' respective motions to dismiss on the basis of Eleventh Amendment immunity are denied.

E.  As to Whether the Plaintiff States a Cause of Action under Section 1983

Section 1983 provides that:

[e]very person who, under color of any statute, ordinance, regulation, custom or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured.

42 U.S.C. § 1983.

To state a claim under Section 1983, a plaintiff must allege conduct attributable to a person acting under color of state law which deprived the plaintiff of a right secured by the Constitution or laws of the United States. See Feingold v. New York, 366 F.3d 138, 159 (2d Cir. 2004) (quoting West v. Atkins, 487 U.S. 42, 48, 108 S. Ct. 2250, 101 L. Ed. 2d 40 (1988)). Therefore, a Section 1983 claim has two essential elements: (1) the defendant acted under color of state law, and (2) as a result of the defendant's actions, the plaintiff suffered a denial of his federal statutory rights, or his constitutional rights or privileges. See Annis v. Cnty. of Westchester, 136 F.3d 239, 245 (2d Cir. 1998); Quinn v. Nassau Cnty. Police Dep't, 53 F.Supp.2d 347, 354 (E.D.N.Y. 1999) (Section 1983 "furnishes a cause of action for the violation of federal rights created by the Constitution.") (citation omitted).

Further, individual defendants can only be liable for Section 1983 violations if they were personally involved in the alleged constitutional deprivations. See Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994) ("It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'")(quoting Moffit v. Town of Brookfield, 950 F.2d 880, 885 (2d Cir. 1991)); Rekowicz ex rel. Congemi v. Sachem Cent. School Dist., No. CV 11–1561 (JS)(ETB), 2012 WL 4172732, at *4 (E.D.N.Y. July 2, 2012) (same).

Here, to the extent the Plaintiff incorporates allegations regarding the procurement of the search warrants, Lato's actions are protected by absolute immunity.   The Plaintiff also alleges that Lato, "acting in concert" with the SPCA, (1) took part in searching the Plaintiff's farm and house as well as seizing her person and property without probable cause; (2) knew that CAB had already determined that there was no probable cause to support the search but nevertheless partook in it; and (3) unlawfully detained and separated her from her children.   In doing so, the

Plaintiff alleges, Lato and Spota deprived her of her Fourth and Fourteenth Amendment Rights. In the Court's view, the second amended complaint contains sufficient factual allegations to state the Plaintiff's Section 1983 claims against Lato at this stage of the litigation.

The Court next considers whether the Plaintiff states a claim under Section 1983 against Spota. The doctrine of *respondeat superior* is inapplicable in cases under section 1983. See Hayut v. State University of New York, 352 F.3d 733, 753 (2d Cir. 2003). "Therefore, supervisors are not automatically liable under section 1983 when their subordinates commit a constitutional tort." Furtick v. Arnone, 3:12-CV-835 RNC, 2012 WL 5182959, at *1 (D. Conn. Oct. 18, 2012). To establish a claim for supervisory liability, the plaintiff must demonstrate one or more of the following: (1) the defendant actually and directly participated in the alleged acts; (2) the defendant failed to remedy a wrong after being informed of the wrong through a report or appeal; (3) the defendant created or approved a policy or custom that sanctioned unconstitutional conduct or allowed such a policy or custom to continue; (4) the defendant was grossly negligent in his supervision of the correctional officers who committed the constitutional violation; or (5) the defendant was deliberately indifferent to the plaintiff's rights by failing to act in response to information that unconstitutional acts were occurring. See Hernandez v. Keane, 341 F.3d 137, 144 (2d Cir. 2003).

In this case, the Plaintiff contends that Spota knew of, acquiesced, and failed to remedy Lato's alleged constitutional misconcduct. Indeed, Spota does not dispute that he knew of and failed to remedy the allegedly unconstitutional acts. Under these circumstances, the Court denies Spota's motion to dismiss the Section 1983 claims against him.

F.  As to the Malicious Prosecution and Abuse of Process Claims

The Defendants contend that the Plaintiff's claims for malicious prosecution and abuse of process under New York law are barred by the one-year statute of limitations.  The Court disagrees.

New York's one-year statute of limitations does indeed govern malicious prosecution and abuse of process claims. See N.Y. CPLR § 215(3) (malicious prosecution must be commenced within one year); Benyo v. Sikorjak, 50 A.D.3d 1074, 1077, 858 N.Y.S.2d 215, 218 (2d Dep't 2008) ("Abuse of process is an intentional tort and, thus, is governed by a one-year statute of limitations.").

 "[C]laims for malicious prosecution and abuse of process do not accrue until the underlying action which is the basis for the claim is terminated in the plaintiff's favor by dismissal." TADCO Constr. Corp. v. Dormitory Auth. of NY, 700 F. Supp. 2d 253, 273 (E.D.N.Y. 2010).  The statute of limitations is an affirmative defense, and the Defendants "moving to dismiss a cause of action as time barred bear[ ] the initial burden of establishing that the time to sue has expired." Town of Hempstead v. Lizza Industries, Inc., 293 A.D.2d 739, 740, 741 N.Y.S.2d 431, 432 (2d Dep't 2002)

Here, the underlying action which is the basis for the Plaintiff's state law claims was conclusively terminated on November 14, 2012, the day in which the Appellate Division reversed the conviction on the single remaining count and dismissed the indictment.  Measured from this date, the instant action was timely commenced on February 15, 2013, well within the applicable one-year limitations period.

It is true, as Lato notes, that the Plaintiff was acquitted on four of the five charges at the trial in 2010, including all the charges related to animal cruelty.  However, as noted above, the

case law indicates that the Plaintiff's state law causes of actions accrue when the entire underlying action or proceeding is dismissed.  Here, because the underlying indictment remained pending until the Appellate Division reversal, the causes of action for malicious prosecution and abuse of process did not accrue until that date. See Britt v. Legal Aid Soc., Inc., 95 N.Y.2d 443, 448, 741 N.E.2d 109, 112, 718 N.Y.S.2d 264 (2000) ("[A] criminal legal malpractice plaintiff cannot assert innocence while the criminal charges remain pending.").  Accordingly, the Court finds that the malicious prosecution and abuse of process claims are not time-barred.

The Court next considers whether the Plaintiff states a cause of action for malicious prosecution.  The elements of such a claim under New York law are: (1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice motivating defendant's actions. See Manganiello v. City of New York, 612 F.3d 149, 160–61 (2d Cir. 2010)

The first two elements are undisputed.  Rather, the Defendants argue that the Plaintiff failed to adequately allege the third and fourth elements – lack of probable cause and actual malice.

Once a suspect has been indicted, the grand jury action creates a presumption of probable cause. See Colon v City of New York, 60 NY2d 78, 82, 455 N.E.2d 1248 (1983).  The Plaintiff asserts that because the indictment was eventually dismissed, that dismissal negates the presumption of probable cause. Cox v. County of Suffolk, 827 F. Supp. 935, 939 (E.D.N.Y. 1993)("where a grand jury indictment is reviewed by a state judge and dismissed due to total lack of evidence . . . the presumption of probable cause raised by that indictment will fail.").  In this case, while it is unclear if there was a "total lack of evidence" supporting the indictment, the

Plaintiff nevertheless makes sufficient viable allegations as to the absence of probable cause. Indeed, the Plaintiff alleges that Lato spearheaded a campaign to bring charges against the Plaintiff despite the fact that the allegations against the Plaintiff had previously failed to survive several stages of review within the District Attorney Office.  The allegation of lack of probable cause is also sufficient as to Spota, who is asserted to have acquiesced in Lato's conduct.

The Court also finds that the second amended complaint adequately alleges that Lato was motivated by actual malice.  Malice does not have to be actual spite or hatred, but means only "that the defendant must have commenced the criminal proceeding due to a wrong or improper motive, something other than a desire to see the ends of justice served." Lowth v. Town of Cheektowaga, 82 F.3d 563, 573 (2d Cir. 1996) (quoting Nardelli v. Stamberg, 44 N.Y.2d 500, 406 N.Y.S.2d 443, 377 N.E.2d 975, 976 (1978)).  In the case at bar, the second amended complaint adequately alleges that Lato was motivated to prosecute the Plaintiff to further his personal friendships with two board members of the SPCA.

As to whether the Plaintiff adequately pleads actual malice on the part of Spota, the Plaintiff need not rely on her generalized assertions that Spota was motivated to prosecute the Plaintiff as part of a policy and practice of directing Lato to work on "special projects" in violation of civil rights laws.  Rather, it is well established that "[a] lack of probable cause generally creates an inference of malice." Boyd v. City of N.Y., 336 F.3d 72, 78 (2d Cir. 2003).

Turning to the Plaintiff's claim for abuse of process, such "a claim lies against a defendant who (1) employs regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse or justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process." Pinter v. City of New York, 09 CIV. 7841 (SAS), 2013 WL 5597545, at *14 (S.D.N.Y. Oct. 10, 2013), reconsideration

denied, 09 CIV. 7841 (SAS), 2013 WL 5763251 (S.D.N.Y. Oct. 23, 2013).  "The crux of a malicious abuse of process claim is the collateral objective element.  To meet this element, a plaintiff must prove not that defendant acted with an improper motive, but rather an improper purpose – that is, he must claim that [the defendant] aimed to achieve a collateral purpose beyond or in addition to his criminal prosecution." Douglas v. City of New York, 595 F. Supp. 2d 333, 344 (S.D.N.Y. 2009) (quotation marks and citation omitted).

 Here, the Defendants do not dispute that the Plaintiff has adequately alleged the first two elements, but contends that Plaintiff fails to allege a collateral objective.  In this respect, the Plaintiff alleges that Lato sought to curry favor with the SPCA and to further his friendship with some of their board members.  In fact, after Lato investigated the Plaintiff, the SPCA apparently offered him a position in the organization.  In the Court's view, these allegations state a quintessential collateral objective required for a claim of abuse of process.

However, even construing the facts in their most favorable light, the Court finds that the Plaintiff has failed to adequately allege a collateral objective driving Spota's conduct.  Again, the Plaintiff alleges that Spota assigned "special projects" to Lato only in the most conclusory fashion. Duamutef v. Morris, 956 F. Supp. 1112, 1119 (S.D.N.Y. 1997) ("[A] complaint which alleges [a collateral motive] in wholly conclusory terms may safely be dismissed on the pleadings alone.")(quoting Flaherty v. Coughlin, 713 F.2d 10,13 (2d Cir. 1983)).

In any event, both the Plaintiff's state law claims of malicious prosecution and abuse of process against Lato and Spota suffer from an additional defect.  Although not required for Section 1983 claims, under New York law, a plaintiff proceeding under either of these theories must allege special damages. Wilhelmina Models, Inc. v. Fleisher, 19 A.D.3d 267, 269, 797 N.Y.S.2d 83, 84–85 (1st Dep't 2005) (malicious prosecution); Morea v. Saywitz, 09–CV–4410,

27

09–CV–3935 (IEG)(CAB), 2010 WL 475302, at *3 (E.D.N.Y. Feb. 8, 2010) (abuse of process).

"Special damages are specific and measurable losses which must be alleged with sufficient

particularity to identify actual losses and be related causally to the alleged tortious acts." Morea,

2010 WL 475302, at *3 (internal marks omitted).  Unsurprisingly then, "'[r]ound numbers' and

general allegations of dollar amounts are insufficient as special damages." Daniels v. Alvarado,

No. 03–CV–5832 (JBW), 2004 WL 502561, at *7 (E.D.N.Y. Mar. 12, 2004).  Moreover, New

York Law requires that the plaintiff plead "special injury" which must entail "some concrete

harm that is considerably more cumbersome than the physical, psychological or financial

demands of defending a lawsuit." Engel v. CBS, Inc., 93 N.Y.2d 195, 205, 689 N.Y.S.2d 411,

711 N.E.2d 626 (1999).  "As set forth in Engel, attorneys' fees and cost associated with

defending a lawsuit do not rise to the level necessary to show special damages." Sankin v.

Abeshouse, 545 F. Supp. 2d 324, 328 (S.D.N.Y. 2008).

  Here, because the Plaintiff has provided round dollar figures in conjunction with her

causes of action for malicious prosecution and abuse of process, she has failed to state these

claims with sufficient specificity.  However, because the Defendants did not raise the issue of

special damages and the Plaintiff may be capable of remedying this pleading failure, the Court

grants the Plaintiff leave to replead, but only as to (1) Lato on both state law causes of action and

(2) Spota on the claim for malicious prosecution.  Specifically, the Plaintiff shall submit any

such amended pleading within thirty days of this Memorandum and Order.  Failure to submit an

amended pleading will result in dismissal of the state law causes of action with prejudice.

## V.  CONCLUSION

  In sum, the Court makes the following findings as a matter of law.  Lato's actions relating

to the procurement of the search warrants are protected by absolute immunity, but his actions

prior to the issuance of the warrants and the execution of the warrants themselves are not protected by absolute immunity.  Spota's actions are not protected by absolute immunity.  The Court declines to make any findings as to qualified immunity at this juncture of the litigation. Finally, the Court finds that the Defendants cannot invoke Eleventh Amendment Immunity.

The Court further finds that the allegations made in support of the Plaintiff's Section 1983 claims, to the extent they are not barred by absolute immunity, are sufficient to state a cause of action as to Lato and Spota.

As to the Plaintiff's state law causes of action for malicious prosecution and abuse of process, the Court finds that these claims are not time-barred.

As to Lato, the Court finds that the Plaintiff, to the extent her allegations are not barred by absolute immunity, adequately alleges the requisite elements for the state law causes of action, except for special damages.  In this regard, the Plaintiff is given leave to replead special damages as to Lato on both state law causes of action.

As to Spota, the Court finds that the Plaintiff has failed to adequately allege special damages on the state law causes of action.  The Plaintiff is given leave to replead her claim of malicious prosecution against Spota.  However, because the Court also finds that the Plaintiff fails to plead the requisite element of a collateral objective for the abuse of process claim against Spota, the Court declines to afford the Plaintiff an opportunity to amend that cause of action and that cause of action is dismissed.  For the foregoing reasons, it is hereby:

**ORDERED**, that the Defendants' motions to dismiss are granted in part and denied in part.  In particular, the Plaintiff's (1) Section 1983 claim against Lato, to the extent it is not barred by absolute immunity, is sufficient to state a cause of action; (2) Section 1983 claim against Spota is sufficient to state a cause of action; (3) malicious prosecution

29

claim against Lato, to the extent it is not barred by absolute immunity, fails to state special damages, but the Plaintiff is given leave to replead that claim; (4) malicious prosecution claim against Spota fails to state special damages, but the Plaintiff is given leave to replead that claim; (5) abuse of process claim against Lato, to the extent it is not barred by absolute immunity, fails to state special damages, but the Plaintiff is given leave to replead that claim; and (6) abuse of process claim against Spota fails to state a collateral objective and special damages, and the Plaintiff is not given leave to replead that claim.

**ORDERED**, that the Plaintiff shall submit a third amended complaint containing her Section 1983 claims and state law claims for malicious prosecution and abuse of process within thirty days of the date of this Memorandum and Order.  Failure to submit an amended pleading will result in dismissal of the state law causes of action with prejudice.

**SO ORDERED.**
Dated: Central Islip, New York
November 7, 2013

_____*Arthur D. Spatt*_____
  ARTHUR D. SPATT
United States District Judge